RECEIVED

JAN 2 6 2011

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| MECHELLE M. COLE | CIVIL ACTION 08-0088 |
| VERSUS | JUDGE HAIK |
| UNITED STATES POSTAL SERVICE, JOHN E. POTTER | MAGISTRATE JUDGE HILL |

## REASONS FOR JUDGMENT

Mechelle M. Cole filed an action against the United States Postal Service alleging discrimination based on race and gender in violation of Title VII of the Civil Rights act of 1964, 42 USC section 2000(e), et. seq. She argues that the Post Service created a hostile work environment and caused her constructive discharge. The defendant filed a Motion for Summary Judgment contending the plaintiff cannot establish a *prima facie* case on the hostile work environment claim because she suffered no harassment and no acts were severe or pervasive enough to alter the terms and conditions of her employment. Further, the United States argues that there were legitimate, nondiscriminatory reasons for the actions taken by the Postmaster in question.

Prior to filing suit, the plaintiff contacted an EEO counsel for the Postal Service and filed a complaint in May 2006. Upon completion of the investigation, the plaintiff requested a hearing with an Administrative Law Judge, which was held on July 30 and September 4, 2007. On October 19, 2007, the ALJ found there was no discrimination and dismissed all claims. The plaintiff timely filed this suit on January 15, 2008.

**PLAINTIFF'S CONTENTIONS:**

Mechelle Cole began a 90-day probationary period of employment with the United States Post Office in Iota, Louisiana in December 2005. She received training from Dorothy LaPoint, a regular mail carrier. Ms. Cole contends that Ms. LaPoint told her at the beginning of her employment that she would have preferred the Postmaster to have hired a man, rather than a woman because men have shown to be more reliable. She further alleges that both Dorothy LaPoint and the Postmaster would follow her on her routes and that Ms. LaPoint complained about the standard of her work. Additionally, she argues that she received unfair treatment in that she was ordered to case mail after competing her route, case bulk mail off the clock, and told to mark-up mail in a non-standard way, among other allegedly unfair acts as specified throughout the record. Ms. Cole also says that she and another African-American woman, Brenda Ball, were treated differently because of their race.

She contends that she was told on April 8, 2006 by Jim Callen, the Postmaster, that he was considering firing her. He asked her to turn in her badge and keys at that point and that he would make a final decision over the weekend. She says that she sought a transfer to another post office on the following Monday, but was denied because Mr. Callen told them he was considering terminating her. Rather than face termination, she chose to resign.

**GOVERNMENT'S CONTENTIONS:**

The government argues that Ms. LaPoint and the Postmaster were doing their job, as they had done for all others they trained, when they accompanied and/or followed Ms. Cole on her route during her training and probationary period. Ms. Cole was specifically hired to provide back-up coverage for Ms. LaPoint, so it would follow that Ms. LaPoint would assist in her training. The government admits that Ms. LaPoint stated to the plaintiff that she found in her

experience that male carriers were more reliable and she wished they had hired a man. The Postmaster testified in the EEO affidavit that he was aware of Ms. LaPoint's view, but that gender was not taken into account during the hiring process. He further attested that he met with the plaintiff prior to her hiring and told her all of the points on which she would be evaluated. During her twenty-nine days of work, the plaintiff committed one hundred and fifty documented errors in mail delivery, including misdelivered checks and IRS returns. There were also instances of an entire box of checks and entire flats of mail being misdelivered. Further, eleven customer complaints attributable to Ms. Cole were received. Additionally, the Postmaster testified that the plaintiff worked past 7 p.m. on only one occasion, when she worked until 7:15 on the day after a holiday which caused a heavy mail load and on which she had car problems during her delivery. On one other occasion, her fourth day on the job, she worked until 6:35 p.m. The record show that she worked no later than 5:30 p.m. any other day.

  The government's motion details several other complaints by the plaintiff, and justification for any action taken by the employer, which the Court will not restate as the record is complete through the filings.

  The Postmaster met with Ms. Cole, according to his testimony, noted the problems with her performance and told her he was considering terminating her. He says that he reminded her during the conversation of the numerous other occasions on which he addressed problems with her. He further told her that he was going to take the weekend to think over the situation, review the records and her comments, and that he would make a final decision. Until that time, she was placed on non-scheduled status until he called her. The Postmaster stated that, when he returned to his home that evening, he had a message to call the Post Office, which he did and was told that Ms. Cole left an envelope. He went into the Post Office the next day, Sunday, and opened the

envelope to find a resignation letter. On Monday, he received a phone call from the Acting Station Manager in Lake Charles who told him the plaintiff was seeking a transfer to his office. Mr. Callen told the Manager of the situation and the transfer was denied. Mr. Callen notified the plaintiff of the denial and she said she wanted to resign. She completed her formal resignation form on April 17, 2006.

**FINDINGS and CONCLUSIONS:**

A Motion for summary judgment is granted if "...the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.C.P. 56. All evidence is to be viewed and all inferences drawn from that evidence in a light most favorable to the party opposing the motion. *Hibernia National Bank v. Carner*, 997 F.2d. 97 (5th Cir., 1993).

To establish a *prima facie* case, the plaintiff must show that: (1) she belongs to a statutorily protected class; (2) she was subjected to harassment in the form of unwelcome verbal or physical conduct involving the protected class; (3) the harassment complained of was based on the statutorily protected class; (4) the harassment affected a term or condition of employment and/or had the purpose or effect of unreasonably interfering with the work environment and/or creating an intimidating, hostile, or offensive work environment; and (5) some basis exists to impute liability to the employer, and supervisory employees knew or should have known of the conduct but failed to take corrective action. *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998). In order to establish a case of constructive discharge, the plaintiff must prove that the employer, through the discriminatory behavior, made the working conditions so difficult that any reasonable person in the plaintiff's position would feel compelled to resign. *Faruki v. Parsons,*

123 F.3d. 315 (5th Cir. 1997).

Upon a thorough review of the record, the Court finds the plaintiff has failed to state a *prima facie* case of harassment. The record is devoid of any evidence of discrimination or harassment based on gender or race which rises to any actionable level. The minimal comment(s) made by a co-worker about her own personal thoughts regarding male and female workers certainly is not tantamount to discrimination or harassment based on gender. Additionally, the Postmaster was aware of Ms. LaPoint's views prior to hiring a new employee and did not take them into account when hiring, as he proceeded to hire Ms. Cole. Further, it is clear the Post Office did not discriminate in its hiring based on gender as it employed several other female employees.

None of the job duties or projects given to the plaintiff during her employment with the Postal Service were overly burdensome or extraordinary. She was a new employee, in the process of training, and was asked to do various jobs. She was supervised during a period of time while she participated in various job-related activities. The Court can not find any wrongdoing by the defendant in the acts alleged. Further, the plaintiff failed to meet her burden of proving that other employees outside of her protected group were treated more favorably. General allegations that white employees were treated better is insufficient to carry the burden of proof.

The plaintiff has offered no evidence that the alleged acts of harassment "affected a term or condition of employment and/or had the purpose or effect of unreasonably interfering with the work environment and/or creating an intimidating, hostile, or offensive work environment", as is required to carry her burden. In fact, the plaintiff specifically admitted that she resigned because she thought she was going to be fired, not because the working conditions were intolerable.

There is no evidence whatsoever of constructive discharge.

Finally, even had she proven a *prima facie* case, which she has not, the defendant has clearly established legitimate, non-discriminatory reasons for its actions. Several of the plaintiffs allegations were simply acts normally taken in the course of training new employees. Further, the record shows there were numerous errors made by the plaintiff during her probationary period and complaints lodged by customers. The Postmaster was simply managing his employees and performing his job duties when he spoke to Ms. Cole about the possibility of termination. She chose to resign rather than face termination. That was Ms. Cole's choice. The record does not support any other conclusion.

Based on the foregoing, the Motion for Summary Judgment filed by the defendant (Doc. #20) is **GRANTED** and the claims of the plaintiff are **DISMISSED WITH PREJUDICE**, all parties to bear their own costs.

**THUS DONE** and **SIGNED** on this 26th day of **January, 2011.**

_____
**RICHARD T. HAIK, SR., DISTRICT JUDGE**
**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**